CHIN, J.,
Concurring. — I agree that the inclusionary housing ordinance at issue here is not an exaction of property for takings purposes and thus is not subject to the test this court established in San Remo Hotel v. City and County of San Francisco (2002) 27 Cal.4th 643 [117 Cal.Rptr.2d 269, 41 P.3d 87]. *487 Instead, “the ordinance falls within . . . municipalities’ general broad discretion to regulate the use of real property to serve the legitimate interests of the general public and the community at large.” (Maj. opn., ante, at p. 461.) But my reasons for upholding the ordinance are narrow.
The ordinance requires the developer to provide a certain number of units that are more affordable, i.e., less expensive, than the unrestricted units presumably will be. This requirement might cause the developer to make a smaller profit on these affordable units than on other units, but so do many valid zoning requirements. What the ordinance does not do, at least on a facial challenge, is require the developer to provide subsidized housing.
The ordinance does not prohibit the developer from building the affordable units in a less expensive way than the other units. It does restrict the ways the developer can build the affordable units more cheaply than other units. As the majority summarizes it, the ordinance requires that the affordable units “have the same quality of exterior design and comparable square footage and bedroom count as market rate units.” (Maj. opn., ante, at p. 451.) But the ordinance also “permits some different ‘unit types’ of affordable units (for example, in developments with detached single-family market rate units, the affordable units may be attached single-family units or may be placed on smaller lots than the market rate units) [citation], and also allows the affordable units to have different, but functionally equivalent, interior finishes, features, and amenities, compared with the market rate units.” (Ibid.)
Thus, the ordinance leaves room for the developer to build the affordable units more cheaply than the other units. Accordingly, it is not clear to me, and certainly not on a facial challenge, that the developer could not turn a profit even on the affordable units, although probably a smaller one than on the unrestricted units. Because of this, I agree with the majority that the ordinance is a valid land use regulation.
But an ordinance that did require the developer to provide subsidized housing, for example, by requiring it to sell some units below cost, would present an entirely different situation. Such an ordinance would appear to be an exaction, and I question whether it could be upheld as simply a form of price control. (See, e.g., maj. opn., ante, at pp. 464-465.)
Providing affordable housing is a strong, perhaps even compelling, governmental interest. But it is an interest of the government. Or, as the majority puts it, it is an interest “of the general public and the community at large.” (Maj. opn., ante, at p. 461.) The community as a whole should bear the burden of furthering this interest, not merely some segment of the community. “All of us must bear our fair share of the public costs of maintaining and *488 improving the communities in which we live and work. But the United States Constitution, through the takings clause of the Fifth Amendment, protects us all from being arbitrarily singled out and subjected to bearing a disproportionate share of these costs.” (Ehrlich v. City of Culver City (1996) 12 Cal.4th 854, 912 [50 Cal.Rptr.2d 242, 911 P.2d 429] (cone. & dis. opn. of Kennard, J.).)
With this caveat, I join the majority in upholding the ordinance in question.